**Paula A. Barran,** OSB No. 803974
pbarran@barran.com
**Shayda Zaerpoor Le,** OSB No. 121547
sle@barran.com
**Donovan L. Bonner,** OSB No. 181929
dbonner@barran.com
Barran Liebman LLP
601 SW Second Avenue
Suite 2300
Portland, Oregon 97204-3159
Telephone: (503) 228-0500
Facsimile No.: (503) 274-1212
Attorneys for Defendants University of Oregon and Hal Sadofsky

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Portland

| | |
|---|---|
| JENNIFER JOY FREYD, | **CV. 6:17-cv-448-MC** |
| Plaintiff, | |
| v. | **DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT** |
| UNIVERSITY OF OREGON, MICHAEL H. SCHILL and HAL SADOFSKY, | |
| Defendants. | |

I, Gordon C. Nagayama Hall, declare as follows:

**Educational and Professional Background**

1.    I am a professor in the Department of Psychology at the University of Oregon. My educational background and professional credentials are summarized in the curriculum vitae attached hereto as Exhibit A.

2.    Following my undergraduate and Master's level education I earned my Ph.D. in 1982. I had both clinical and academic experience before I was recruited, in 2001, to the University of Oregon, including at the University of Washington, Kent State University, and Pennsylvania State University.

Page 1 - DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT

**Duties, Responsibilities and Accountabilities at the University of Oregon: CoDaC**

3.      Although my academic appointment throughout my employment with the University of Oregon has been within the Department of Psychology, for the majority of my employment with the University of Oregon I have had substantial duties and responsibilities that have been carried on outside of that department.  Almost immediately upon joining the University in 2001, I was appointed Interim Director for the Center on Diversity and Community, which is also commonly known as CoDaC.  CoDaC had been recently founded and was staffed with a diverse team of research faculty, graduate students, and professionals with backgrounds in psychology, sociology, education, communication, curriculum development, conflict mediation, student affairs and theater arts.  CoDaC has sponsored a range of training programs, professional development workshops, and public events.  CoDaC operated relatively independently until 2013, when it was formally incorporated into the Division of Equity and Inclusion.  Its mandate included working with a broad range of stakeholders across campus to advance the university's equity and inclusion roles.  My personal background as well as my prior scholarly and clinical work with ethnic minorities facilitated my work with CoDac.

4.      I was initially the Interim Director of CoDaC for a year, and resumed work with that organization in 2008.  I remained with CoDaC from 2008 until 2017.  For seven years, from 2008 until 2015, I was the Associate Director of Research for CoDaC and in 2015 I became the Interim Director of CoDaC, a position I held for two more years, until the end of the 2016-17 academic year.  During that time I continued to hold an appointment with the Department of Psychology, but my CoDaC responsibilities occupied a significant and substantial amount of my time.  I was officed with CoDaC at a location on campus that was different from the psychology offices.  I estimate that my work with CoDaC occupied half of my time, sometimes more.  Because the focus of CoDaC is on the advancement and inclusion of minority populations, my duties included providing support for the research work of other faculty across all departments of the

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

university. I participated as a representative of the Division of Equity and Inclusion in meetings, and worked one-on-one with faculty to assist them in planning their work and gathering necessary financial and other kinds of support for their work and providing day-to-day support for faculty development. I represented the Division on Equity and Inclusion in meetings with the central administration, and planned and presented workshops on how to understand and how to navigate various processes and to advance as faculty, again for a broad and diverse group of academic concentrations. CoDaC did not provide me with a research platform for my own work; rather my role with CoDaC was within a center that was designed to provide support for the development of other faculty. I continued to teach on a much-reduced basis, but the CoDaC commitments and responsibilities limited much of the scholarly research work I would otherwise have done for my personal academic pursuits.

**Duties, Responsibilities and Accountabilities at the University of Oregon: Director of Clinical Training and Accreditation Responsibilities**

5.      In addition my CoDaC responsibilities, I was asked to assume the role of Director of Clinical Training within the Department of Psychology. I held this role for two distinct periods of time – from 2003-2007, and then again from 2010-2014. My first appointment as Director was at the time I initially transitioned from my early work with CoDaC, and upon the end of that first appointment I moved into the Associate Director of Research position with CoDaC. The second time I was appointed Director of Clinical Training I was, at the same time, serving as Associate Director of Research at CoDaC.

6.      The Director of Clinical Training position imposes substantial administrative responsibility. In that position, for both of my appointments, I had oversight responsibility for the psychology department's Ph.D. clinical training, some of which is done at external locations or sites. That, in turn, involved ensuring proper site selection and management, locating and arranging for alternate sites (sometimes on short notice or on an emergency basis), ensuring the clinical training provided by sites was content-rich and academically sound, approving

Page 3 - DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT

00722501.1

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

applications, ensuring that students were fully prepared to move into their internships, and related administrative responsibilities to ensure the effectiveness of external clinical training of students.

7.    During my first appointment as Director of Clinical Training, I was responsible for guiding the clinical training program through the accreditation process for the American Psychological Association, work that I would repeat during my second and later appointment to this same position.  This accreditation work was extensive, detailed, and extremely time consuming. The accreditation standards require preparation of a comprehensive self-study accreditation document which includes training goals; objectives and practices; student, faculty and financial resources; program policies and procedures competencies that students are expected to obtain; and actual outcome data that demonstrate the achievement of these competencies.  Once that study has been submitted and accepted, the accrediting organization conducts an on-site review of the program through a team of external professional colleagues to ensure consistency with the organization's Guidelines and Principles for Accreditation of Programs in Professional Psychology.  The site visit is followed by a report to the Commission on Accreditation.  I attended many meetings to follow through on processes, consulted with colleagues in other institutions, assembled the necessary supporting materials, worked through the accreditation standards to ensure and demonstrate compliance, and was the overall responsible university official for this major work.  In 2003, the university was awarded a seven-year accreditation from the American Psychological Association.

8.    The 2003 accreditation expired in 2010.  That same year I returned to the position of Director of Clinical Training in 2010 and again accepted responsibilities to lead the accreditation renewal process.  I held this second appointment alongside of my CoDaC appointment, to 2014. Again, my administrative responsibilities filled substantially more than half of my available work time, particularly because in addition to my administrative position as Director of Clinical Training I was still, at the same time, the Associate Director of Research with CoDaC.

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212

00722501.1

9.      When I returned to the position of Director of Clinical Training in 2010, I was also responsible for leading a new and additional accreditation, this one through the Psychological Clinical Science Accreditation System.  My responsibilities for that accreditation process involved preparation of the letter of intent, a detailed self-study, application materials, and arranging, coordinating and completing a site review.  Although I was able to build on some of the work done for the American Psychological Association accreditation, there were additional details to which I had to be attentive, and I was working with a different time frame and a different accrediting body, so I was responsible to demonstrate that the University of Oregon program met the PCSAS mission and standards.  At the same time, I was responsible to carry out the additional responsibilities of the Director of Clinical Training from my reappointment in 2010 until I stepped down at the end of the 2013-14 academic year.

10.     When I stepped down as Director of Clinical Training in Spring 2014, I continued to serve as the Associate Director of Research for CoDaC, and I held that position for a further year.

11.     In 2015, I was appointed Interim Director for the Center on Diversity and Community, a position which took more than half of my time for administrative responsibilities. I continued in that position until the end of the 2016-2017 academic year.

12.     I have had two retention adjustments during my career with the University of Oregon.  In approximately 2007 or 2008, as I was finishing my first assignment as Director of Clinical Training, I was recruited by the University of Michigan which at that time was looking at an accreditation process similar to the one I had just completed.  I did not seek out this attractive offer.  At the time, I was advised by the University of Oregon that the university wished to retain me and was given an increase if I agreed not to leave.

13.     In 2015, again without seeking it, I received an outside offer from DePaul University.  This was very attractive to me for family reasons, since it included a valuable tuition

Page 5 - DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

exchange program which would have been a family benefit.  The offer was attractive to me personally as well.  Much of my work is done with culturally diverse populations.  The cultural diversity of Chicago's other populations would have served my research interests.  At the same time I had been encouraged to apply for a position at the University of California at Los Angeles to work in the field of diversity science.  The University of Oregon provided me additional research funds so that I would not accept one of these offers but would remain with the University of Oregon.  Even though this "retention offer" was not what I had requested, it was sufficient for me to make the decision to remain in Eugene.  Following the retention offer I continued with my CoDaC responsibilities.

14.    Within the Department of Psychology for the entire time I have been at the University of Oregon until her retirement in 2016, Helen Neville was consistently paid more than I was.

15.    In 2016-2017, and again in this current academic year, Phil Fisher who is junior to me in seniority and in years since Ph.D. has received higher compensation than I have.  This is largely a result of his having received retention offers.  I am generally familiar with Dr. Fisher's responsibilities.  Because of his grant supervision and grant activities as well as his work following me as the Director of Clinical Training, he does work that is substantially dissimilar from me as well as from other faculty within the department.  In this most recent academic year, the same is true of Nicholas Allen who received a retention offer which moved him ahead of me in compensation.  He too does work which is substantially dissimilar from that of other faculty within the department who do not work with as many grants as he does.

16.    Ulrich Mayr is presently paid more than I am although I am senior to him in years since PhD.  As the Department Head, he occupies the position which saps nearly all of his working time.  His work as Department Chair, a position he has held for a number of years, is a

Page 6 - DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT

huge responsibility and a qualitatively different job from the position of a faculty member in the department.

**I hereby declare under penalty of perjury that the foregoing is true and correct.**

Executed, on _June 13_, 2018.

_____
Gordon C. Nagayama Hall

00722501.1

BARRAN LIEBMAN LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR 97204-3159
PHONE (503) 228-0500   FAX (503) 274-1212

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November, 2018, I served the foregoing **DECLARATION OF GORDON C. NAGAYAMA HALL IN SUPPORT OF DEFENDANTS UNIVERSITY OF OREGON AND SADOFSKY'S MOTION FOR SUMMARY JUDGMENT** on the following parties at the following addresses:

Jennifer J. Middleton
Caitlin V. Mitchell
Johnson Johnson Lucas & Middleton, PC
975 Oak Street, Suite 1050
Eugene, OR  97401-3124
jmiddleton@justicelawyers.com
cmitchell@justicelawyers.com
Attorneys for Plaintiff

Whitney Stark
Albies & Stark, LLC
210 SW Morrison Street, Suite 400
Portland, OR  97204-3189
whitney@albiesstark.com
Attorneys for Plaintiff

Stephen F. English
Cody Weston
Nathan R. Morales
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR  97209-4128
senglish@perkinscoie.com
cweston@perkinscoie.com
nmorales@perkinscoie.com
Attorneys for Defendant Michael H. Schill

by the following indicated method or methods set forth below:

☒ **Electronic Filing using the Court's ECF System**

☐ **First-class mail, postage prepaid**

☐ **Hand-delivery**

☐ **Overnight courier, delivery prepaid**

☐ **E-mail**

*s/Paula A. Barran*
_____
Paula A. Barran
Shayda Zaerpoor Le

Page 1 – CERTIFICATE OF SERVICE

**BARRAN LIEBMAN** LLP
601 SW SECOND AVENUE, SUITE 2300
PORTLAND, OR  97204-3159
PHONE (503) 228-0500  FAX (503) 274-1212