Jennifer J. Middleton, OSB # 071510
jmiddleton@justicelawyers.com
Caitlin V. Mitchell, OSB # 123964
cmitchell@justicelawyers.com
JOHNSON, JOHNSON, LUCAS & MIDDLETON, PC
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Phone: 541/683-2506
Fax:    541/484-0882

Whitney Stark, OSB # 090350
whitney@albiesstark.com
Albies & Stark, LLC
210 SW Morrison Street, Suite 400
Portland OR 97204-3189
Phone: 503/308-4770
Fax:    503/427-9292

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## EUGENE DIVISION

| | |
|---|---|
| **JENNIFER JOY FREYD,** | **Case No. 6:17-CV-00448-MC** |
| Plaintiff, | **PLAINTIFF'S SURREPLY TO DEFENDANTS' EVIDENTIARY OBJECTIONS** |
| vs. | |
| **UNIVERSITY OF OREGON, MICHAEL H. SCHILL and HAL SADOFSKY,** | |
| Defendants. | |

## TABLE OF CONTENTS

I.      Introduction ..................................................................................................................... 5

II.     Holly Arrow Declaration ............................................................................................ 5, 6, 7

III.    Sara Hodges Declaration ............................................................................................... 8, 9

IV.     Louis Moses Declaration ..................................................................................... 10, 11, 12, 13

**PAGE 1-**  PLAINTIFF'S SURREPLY TO DEFENDANTS' EVIDENTIARY OBJECTIONS

V.      Jennifer Freyd Declaration ............................................................................ 13, 14, 15, 16, 17

VI.     Dare Baldwin Declaration ................................................................................ 17, 18, 19, 20

VII.    Kevin E. Cahill Declaration ............................................................................. 20, 21, 22, 23

VIII.   Conclusion ........................................................................................................................ 23

ALBIES & STARK
210 SW MORRISON ST., SUITE 400, PORTLAND, OR 97204 TEL
503.308.4770 | FAX 503.427.9292

## TABLE OF AUTHORITIES

Cases

*Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F.Supp. 2d 1029, 1044 (D. Or. 2008) .............21

*Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-CV-01740, 2014 U.S. Dist. Lexis 18361, at \*16-17 (D. Or. Feb. 13, 2014) ......................................................................................................................................................6

*Atl.-Pac. Const. Co. v. N.L.R.B.*, 52 F.3d 260, 263 (9th Cir. 1995)................................................. 15

*Burch v. Regents of Univ. of Cal.* 433 F. Supp. 2d 1110, 1115 (E.D. Cal. 2006) ......6, 11, 16, 17, 21

*Butler v. Portland Gen. Elec. Co.*, 748 F. Supp. 783, 786 (D. Or. 1990)............................................21

*Flynn v. Portland Gen. Elec. Co.*, 958 F.2d 377 (9th Cir. 1992)............................................................21

*Fraser v. Goodale,* 342 F.3d 1032, 1036-37 (9th Cir. 2003) ................................................................17

*Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1398 n.28 (D. Or. 1996) ................................21

*Lindsey v. Clatskanie People's Util. Dist.*, 140 F. Supp. 3d 1077, 1096 (D. Or. 2015)................6, 12

*Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 499 (9th Cir. 2015)......................................................10

*Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir. 1986)..............................................................11

*Tefera v. City Ctr. Parking*, 2009 U.S. Dist. Lexis 13431, at \*6 (D. Or. Feb. 20, 2009) ...............10

*U.S. v. Beck*, 418 F.3d 1008, 1015 (9th Cir. 2005) .................................................................................6

Federal Rules of Evidence

Fed. R. Evid. 403.................................................................................................................... 7

Fed R. Evid. 602 42 U.S.C. § 1983 ....................................................................................5

Fed. R. Evid. 701................................................................................................6, 7, 11, 12

Fed. R. Evid 801(d)(2)...........................................................................................................16

Fed. R. Evid. 801(d)(2)(D).....................................................................................................9

Fed. R. Evid. 803(3)..................................................................................................9, 15, 17

Fed. R. Evid. 1002.................................................................................................11, 15, 18

## I.    INTRODUCTION

In their Reply Memorandum in Support of Defendants University of Oregon and Sadofsky's Motion for Summary Judgment, defendants raise objections to portions of six declarations offered by plaintiff in support of her Opposition to Summary Judgment.  Defendants make numerous baseless objections, routinely ignoring relevant foundational evidence and claiming evidence is argumentative when, in fact, that evidence simply disputes defendants' own evidence.  Indeed, Defendants' objections only highlight the numerous material disputed facts that exist here.  As discussed in detail below, Defendants' evidentiary objections are without basis and should be denied.

## II.    Holly Arrow Declaration

**Paragraph 3.** Defendants' objections based on lack of foundation, lack of competence, and inadmissible opinion are without merit. Professor Arrow is full professor in the Psychology Department, has been a faculty member at the University of Oregon since 1996, and has served on the Psychology Department's Executive Committee, which performs merit reviews of faculty members, for multiple terms. As her CV shows, she researches, publishes, and has applied for and received grants. *See* Dkt. #69, Exh.1. Arrow's statements regarding research expenses and grant availably thus are competent and have foundation because they are based on personal knowledge as a professor in the relevant department, with relevant experience. *See, e.g.,* Fed R. Evid. 602 (testifying witness must have personal knowledge of the matter; evidence to prove personal knowledge may consist of the witness' own testimony).

Arrow's statements also are admissible as lay witness opinion testimony:  They are "not based on scientific, technical, or other specialized knowledge," they are "rationally based on [her]

perception," and they are "helpful to . . . determining a fact in issue," in that they provide

information regarding the way in which merit is determined within the Psychology Department. Fed.

R. Evid. 701 (providing requirements for lay witness opinion testimony); *see U.S. v. Beck*, 418 F.3d

1008, 1015 (9th Cir. 2005) (percipient witness testimony requires "sufficient contact" with subject of

testimony to achieve a "level of familiarity that renders the lay opinion helpful") (citation and

internal quotes omitted).

**Paragraph 5**. Defendants' objections that this paragraph should be excluded as irrelevant,

confusing, and misleading are without merit. Defendants' relevancy objection (to this and other

evidence) is "duplicative of the summary judgment standard itself" because courts "can award

summary judgment only when there is no genuine dispute of material fact. *See Lindsey v. Clatskanie

People's Util. Dist.*, 140 F. Supp. 3d 1077, 1096 (D. Or. 2015) ("objections to evidence on the ground

that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal

conclusion are all duplicative of the summary judgment standard itself") (citing *Burch v. Regents of

Univ. of Cal.* 433 F. Supp. 2d 1110, 1115 (E.D. Cal. 2006)); *Ambrose v. J.B. Hunt Transp., Inc.*, No. 3:12-

CV-01740, 2014 U.S. Dist. Lexis 18361, at *16-17 (D. Or. Feb. 13, 2014) ("not all objections are

necessary, or even useful, given the nature of the summary judgment motions in general")(citations

omitted).

In any event, the evidence *is* relevant and establishes a disputed fact: Professor Arrow's

statement as to why she did not pursue a position the London Business School provides factual

information as to the ways in which women face gender-specific obstacles in pursuing offers from

other universities and using those offers to leverage retention raises. These are facts "of

consequence" because they provide evidence as to how and why the University's retention policy disparately affects female faculty, they support Freyd's testimony regarding why she did not seek an outside offer, and they rebut arguments made by defendants. The evidence is probative and is not, as defendants suggest, likely to mislead a jury. Fed. R. Evid. 403.

**Paragraph 9**. Defendants' objections based on lack of foundation, improper personal opinion, lack of competency, speculation, and relevancy are without merit. As a long-standing member of the Psychology Department and former member of the Executive Committee, Professor Arrow has personal knowledge of the gender inequity in Psychology Department salaries, an issue that has been widely discussed within the department for years, including in a letter written by Professor Arrow. *See* Dkt. #69, Exh. 2. Arrow's statements as to the negative effect of that inequity on morale and workload are not "inadmissible opinion." Her statements are "rationally based on [her] perception." Fed. R. Evid. 701. In addition, Arrow's testimony is "helpful to . . . determining a fact in issue" because she counters Defendants' apparent argument that the University's retention practices are a "business need," showing instead that those practices come at a significant cost to the department.

Further, the fact that Arrow refers to closing the gap in "regression lines" without identifying a specific study does not render her statement inadmissible. Defendants' objection is incorrect because her declaration references specific regression lines (*see* Dkt. #69, Exh. 2, pp.3-6). And, in any event, the purpose of her statement is not to provide testimony regarding a specific regression line analysis, but to illustrate the demoralizing effect of defendants' practices on the department as a whole.

### III.   Sara Hodges Declaration

**Paragraphs 2, 3, and 5.** Defendants' objection that these paragraphs are irrelevant, immaterial, confusing, and misleading should be dismissed. Professor Hodges's statement regarding her negative experience in attempting to negotiate a salary raise demonstrates that the University treats women who attempt to engage in such negotiations differently from men, which, in turn, supports plaintiff's disparate treatment argument. Hodges' statement also provides evidence of how and why salary determinations that are heavily dependent on retention raise negotiations disparately impact female faculty, because women may correctly perceive that they are less likely to be successful in such negotiations. In addition, Hodges provides evidence that defendants can, and do, make salary determinations based on equity considerations (when they affect men). This evidence undermines Defendants' claim that Plaintiff failed to propose an "equally effective alternative" to Defendants' current discriminatory practices.

Defendants object that Hodges' declaration is inadmissible because Plaintiff has never undertaken an administrative position as dean of the graduate school. But this objection is nonsensical. Presumably, defendants' objection is that a jury may be confused because Hodges served in an administrative position and as a dean, but Plaintiff did not. Evidence from individuals in different jobs is routinely offered at trial, without causing confusion in a jury. Moreover, Defendants' objection would render inadmissible evidence from all of its witnesses who served in an administrative position or as a dean. For all of these reasons, Hodges' testimony does not create a danger of confusing or misleading a jury.

PAGE 8- PLAINTIFF'S SURREPLY TO DEFENDANTS' EVIDENTIARY OBJECTIONS

Hodges's description of her conversation with the Provost's office, whom she does not identify by name, is not "inadmissible hearsay." The statements are not offered for the truth of the matter asserted (that giving Hodges a raise would in fact "disturb the relationship" of her salary to that of her male peer) but to show the declarant's state of mind and intent. Fed. R. Evid. 803(3). It is also admissible as a statement of a party opponent. Fed. R. Evid. 801(d)(2)(D).

Finally, Defendants object, for lack of foundation, to Hodges's statement in Paragraph 4 that her request for a permanent salary raise was "not unusual" because "faculty who take on administrative roles are often given boosts to their permanent salaries." As a long-time full professor in the Psychology Department who also has experience in administrative roles, including as dean, Professor Hodges has the requisite personal knowledge to support that factual assertion.

**Paragraph 4**: Defendants' argument that this paragraph is inadmissible for lack of relevance and lack of foundation should be denied. Hodges' experience as a professor in the Psychology Department, and her service as Dean, give her the requisite personal knowledge to support her observation that the department was "struggling with a problem with its female full professors being paid less than its male full professors." As well-established in Plaintiff's opposition, gender inequity in salaries was widely acknowledged and a subject of debate within the department for years. Hodges' statement is relevant because it provides context for understanding the paragraph that follows, in which Hodges explains that she was denied a permanent salary raise due in part to the University's concern that a raise for Hodges would cause her to be paid more than a male junior to her. Lastly, Defendants' objection to Hodges' "assertion that women were paid less for substantially equal jobs" fails because Hodges did not make that assertion in her declaration.

## IV.    Louis Moses Declaration

**Paragraphs 3, 5, 6, and 7.** Defendants wrongly assert that Professor Moses' statements should be excluded because they are "conclusory" and "hyperbolic." Defendants do not identify which statement(s) is allegedly hyperbolic, but none are. Instead, Moses' declaration consists of relevant lay witness opinion based on facts within his personal knowledge as a long-time psychology professor and department head.

The mere fact that Professor Moses strongly disagrees with Defendants does not make his statements "hyperbole," nor render them inadmissible. *See, e.g, Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 499 (9th Cir. 2015) (finding that where the defendants questioned evidence at the summary judgment stage, "the weight is to be assessed by the trier of fact at trial, not to be the basis to disregard the evidence at the summary judgment stage"); *Tefera v. City Ctr. Parking*, 2009 U.S. Dist. Lexis 13431, at *6 (D. Or. Feb. 20, 2009) (overruling objections to personal knowledge and not supported by competent evidence at summary judgment because they go the weight of the evidence, not its admissibility).

Defendants' subsequent assertions that Moses' statements are inadmissible because they lack foundation and are inadmissible lay witness opinion are similarly without merit. Moses joined the Psychology Department faculty in 1992 and became a Full Professor in 2008. He served as Department Head from 2007 – 2013, was Associate Head prior to that time, and has served on the Executive Committee for multiple terms; in those capacities, he was involved in performing and overseeing merit reviews of faculty members in the department, including Professor Freyd. His experience and background well-establish his foundation for the lay witness opinions he offers.

Moses' observation that gender inequity is "demoralizing" both for faculty members and for students who will become "the next generation of psychological scientists" is not, as Defendants assert, inadmissible "speculation about the future," but a personal observation of how the gender inequity in the Psychology Department affects morale among current students and faculty. Moses' statements are admissible as lay witness opinion testimony because they are "rationally based on [his] perception," and are "helpful to . . . determining a fact in issue," by providing facts that contradict defendants' assertion that the University's retention practices are a "business need." Fed. R. Evid. 701.

Finally, Defendants' argument that "reference to unidentified 'governance documents' lacks compliance with the best evidence rule," based on Moses' statement referencing the Psychology governance documents, is misplaced. The best evidence rule provides that an original, rather than a copy, should be offered to prove the content of a writing or recording. *See* Fed. R. Evid. 1002 (titled "Requirement of the Original"); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318 (9th Cir. 1986). But Plaintiff is not offering Moses' testimony to prove the content of the governance documents. Rather, the statement cited by Defendants provides context for Moses' statement that full professors in the Psychology Department are all held to the same ultimate standard. In any event, the objection is additionally not a basis for exclusion of this statement as that document would be admissible at trial. *See Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1115 (E.D. Cal. 2006) (when evidence is not presented in an admissible form in the context of a motion for summary judgment, but may be presented in an admissible form at trial, a court may consider that evidence).

**Paragraphs 8,9, 10, and 11**. Moses' declaration testimony constitutes admissible lay witness opinion testimony under Fed. R. Evid. 701. Moses' statements are relevant to determining facts that are in issue, for example, whether the University's retention raise practices have detrimental effects on women, whether receipt of grant funding is a primary basis on which individual faculty members are evaluated or compensated, the relationship between grant funding and the quality of a person's research, and the relationship between seniority and salary. To the extent any of the content is argumentative (which it is not), as Defendants assert, this establishes that disputed facts exist. *Lindsey*, 140 F. Supp. 3d at 1096 (recognizing that objections on the ground of argumentative are duplicative of the summary judgment standard).

**Paragraph 12**. Moses lays significant foundation based on his extensive experience and knowledge of the Psychology Department. His statement is based on his opinion and experience in that capacity and therefore is admissible as lay witness opinion. Again, Defendants are wrong in characterizing Moses' statements as "argument."

**Paragraph 13.** Defendants wrongly argue that this paragraph should be excluded because is irrelevant, argumentative, lacks foundation, and fails to identify individuals alleged to have contributed to conversations; defendants also argue that "accusations of 'negligence' purport to state a legal conclusion." Defendants' assertions of lack of foundation and argument fail for the same reasons articulated above: Moses' statements are based on his personal knowledge and experience as Department Head. In this paragraph, Moses describes a specific instance during his time as Department Head when the University approved a retention package that not only provided a raise to Professor Mendle, a faculty member who had received an outside offer, but also an equity raise

for others within the department. This is highly relevant evidence supporting Plaintiff's argument

that there is an equally effective alternative to Defendants' current discriminatory practices.

Defendants object to the fact that Moses did not identify the names of the specific individuals

involved in approving that retention package, but that objection does not render his statement

inadmissible. Moses' comment that the administration was "negligen[t]" for not following its own

retention offer policies is not a legal conclusion in this case, which does not involve a claim for

negligence, but an opinion comparing the University's capacity for following its own guidelines to its

current practice based on his personal experience.

## V.    Jennifer Freyd Declaration

**Paragraphs 1, 6, 8.** Defendants argue that these paragraphs lack foundation, lack personal

knowledge, are conclusory and argumentative, and "represent inadmissible opinion." In Paragraph 1,

Professor Freyd describes her position at the University of Oregon and the number of years that she

has been teaching there; information she has been told regarding her merit reviews; and that, as far

as she knows, she has been paid a salary that is below the regression line. In Paragraph 6, Professor

Freyd describes her contributions to her field, including specific theories that she has articulated and

developed in her published work. In Paragraph 8, Professor Freyd describes her publications and

her H-index score. She also states the H-index scores of her male colleagues, based on information

that she obtained the last time that she checked those scores. These are not argumentative

statements, but a description of relevant facts.  Further, Plaintiff's experience and personal

knowledge is well-established here, through her testimony and her CV. *See* Dkt. #72, Exh. 1.  There

is no colorable argument that paragraphs 1, 6, and 8 are inadmissible.

**Paragraph 13**. Defendants' objections that these statements lack foundation and personal knowledge, are inadmissible lay witness testimony, contain irrelevant speculation, and are conclusory are wholly without merit. Professor Freyd describes her role and responsibilities as an advisor and mentor. This discussion is based on her personal knowledge and experience, and it is relevant to the question of the work performed by Freyd and the nature of that work in comparison to her male colleagues. Professor Freyd's statements regarding doctoral psychology students, including that she has attracted a large percentage of applicants to the department and that many of her students are racial or sexual minorities, are likewise based on her personal knowledge and do not require a "citation or source."

**Paragraph 18**. Defendants' objection that Professor Freyd lacks personal knowledge as to "whether others have a public presence" is without merit. The statement is explicitly limited to her own personal knowledge of this matter. Freyd Decl. ¶ 18 ("As far as I know, I am the only faculty member in my department who has this type of public presence.").

**Paragraph 20**. Defendants object on the basis that Professor Freyd "lacks personal knowledge or foundation whether any person wastes tax payer dollars." Freyd is not claiming that any other person "wastes tax payer dollars." Rather, in stating "I have learned how to be efficient and effective as a researcher without utilizing (or wasting) tax-payer dollars," she is explaining that she herself conducts her research without relying unnecessarily on state funds. Freyd has the personal knowledge to support that statement.

**Paragraph 21**. Defendants assert that Paragraph 21 is "argumentative and speculative." To the contrary, she offers facts and admissible lay witness opinion testimony based on her extensive

210 SW MORRISON ST., SUITE 400, PORTLAND, OR     ALBIES & STARK     97204 TEL 503.308.4770 |FAX 503.427.9292

personal knowledge. Freyd has been a psychology professor for decades who has applied for and received many grants, both public and private.

**Paragraph 24.** Defendants' "best evidence" objection should be rejected. Professor Freyd explains when she learned of salary inequity in the Psychology Department by describing documents she reviewed.  This evidence is not offered to prove the contents of any documents and therefore the best evidence rule is irrelevant.   Fed. R. Evid. 1002 ("An original writing . . . is required *in order to prove its content*[.]") (emphasis added).

**Paragraph 25**. Defendants' objection that the assertions in Paragraph 25 are inadmissible due to lack of personal knowledge or foundation, hearsay, inadmissible opinion of a lay witness, speculation, and because they are conclusory are nonsensical. Professor Freyd describes her personal interactions and experiences, offering neither speculation or unsupported conclusions.  Freyd's statements are not offered for the truth of the matter asserted but to show notice to the University, the University's failure to take action and relevant information regarding the University's response, as well as to provide relevant context.  Fed R. Evid. 803(3); *Atl.-Pac. Const. Co. v. N.L.R.B.*, 52 F.3d 260, 263 (9th Cir. 1995) (testimony was not offered for truth of the matter asserted, but to show the context within which the parties were acting and to permit the factfinder to learn the circumstances surrounding the matter).

**Paragraph 27**. Defendants' objection that this paragraph is "inadmissible argument" fails. Professor Freyd describes her reasons for not pursuing a position at another academic institution in order to negotiate a retention raise, which is directly rebuts several of defendants' arguments. This is relevant factual evidence.

210 SW MORRISON ST., SUITE 400, PORTLAND, OR        ALBIES & STARK        97204 TEL 503.308.4770 | FAX 503.427.9292

**Paragraph 28**. Defendants argue that this paragraph is inadmissible for lack of foundation and personal knowledge and because it is "speculative, inadmissible opinion." Professor Freyd describes her perception of the availability of retention offers to male and female faculty "[b]ased on [her] experience and observation" as a female faculty member who has worked at the University of Oregon for more than 30 years. She is not required to provide a "citation or source" for her own observations. Freyd mentions two female faculty who had negative experiences in retention negotiations. They are not "anonymous declarants" because Freyd does not recount their statements; furthermore, Freyd could testify to their identities if necessary. *See Burch* 433 F. Supp. 2d at 1115.

**Paragraph 30**. Defendants' objection that this paragraph is inadmissible due to lack of foundation and personal knowledge, and because it is "speculative, inadmissible opinion," fails. Professor Freyd describes the accomplishments of psychology professor Helen Neville. Freyd has personal knowledge of these accomplishment because she was Professor Neville's colleague for many years. Defendants again misapply the best evidence rule because Plaintiff does not refer to any document to prove its content. Defendants' objection that the statements are speculative goes to their weight, not to their admissibility, and highlights the presence of contested facts.

**Paragraphs 31 and 32.** Defendants' objection for lack of foundation and personal knowledge, hearsay, inadmissible lay witness opinion, speculation, and argument, all fail. In these paragraphs, Freyd describes interactions that she had with Defendant Sadofsky. Freyd has personal knowledge of her own interactions with Sadofsky. Her recitations of his statements are not hearsay because they are statements of a party opponent. Fed. R. Evid 801(d)(2). Freyd's reference to the email that she

received from Sadofksy is not being used to "prove the content" of an original writing, but to explain Freyd's state of mind and to provide context for Freyd's opinion that Sadofsky was dismissive of her research and was looking for ways to minimize the problem of sexual assault on campus. Fed. R. Evid. 803(3). Regardless, Freyd's statements recounting the contents of the email are admissible because the email itself would be admissible at trial as a statement of a party opponent. *Burch*, 433 F. Supp. 2d at 1115; *Fraser v. Goodale,* 342 F.3d 1032, 1036-37 (9th Cir. 2003) (considering evidence from a diary, notwithstanding the defendants' hearsay objections, in the context of a motion for summary judgment because the contents of the diary were "mere recitations of events within the [Plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways").

In objecting that Freyd's statements are speculative, argumentative, and conclusory, defendants are merely disagreeing with Freyd's understanding of the significance of her interactions with Sadofsky; those objections go to the weight of Freyd's statements not to their admissibility, and they highlight the presence of contested facts.

**Paragraph 33.** Defendants' objection to this paragraph as argumentative fails. Freyd describes how being paid significantly less than her male peers over the course of her career has affected her psychologically and emotionally. This is not argument, but a recitation of personal experience that provides relevant context.

## VI.    Dare Baldwin Declaration

**Paragraph 4.** Defendants' arguments that this paragraph is inadmissible based on lack of personal knowledge, lack of foundation, hearsay "without identifying the declarant," speculation, and that

Professor Baldwin "offers opinion rather than fact," are without merit. Baldwin describes facts only based on her personal experience. Specifically, Baldwin's statements are based on her personal experience and observations as a faculty member in the department and as a member of the department's Executive Committee. *See* Dkt. #70, Exh. 1. Defendants' assertion that Baldwin does not identify a declarant is incorrect. *See* Dkt. #70, Exh. 2 (identifying Ulrich Mayr is the individual who relayed the information to her). Even if the declarant were not identified it would not render the evidence inadmissible. Further, it is not hearsay because it is not offered for the truth of the matter asserted. Defendants' additional objections go to the weight of the evidence and not the admissibility and indicate the presence of contested facts.

**Paragraphs 5 – 13**. Defendants' objections to these paragraphs as inadmissible for being argumentative, lacking in foundation, speculative, not based on personal knowledge, noncompliant with the "best evidence rule," irrelevant, "express[ing] personal opinions," and "accusatory," are without merit. Professor Baldwin's testimony in response to the Declaration of Dean Hal Sadofsky not only demonstrates contested facts, but is relevant to rebut the evidence submitted in his declaration. By offering evidence on this topic through the Declaration of Sadofsky, Defendants have conceded to its relevance and cannot now argue that statements directly contesting various factual points are not relevant. Further, her statements are based on her personal experience and knowledge as the subject of the retention negotiation at issue. Defendants' "best evidence rule" objection is otiose as Professor Baldwin does not seek to prove the contents of any original writing. Fed. R. Evid. 1002. Finally, no statements in the declaration are offered for the truth of the matter

asserted (for example, that the emails from the University of Birmingham clarified that Dr. Allen was the sole target of the recruitment efforts) but to show the declarant's state of mind.

**Paragraph 14.** Defendants' objections to this paragraph based on hearsay and lack of foundation and personal knowledge are without merit. First, this paragraph describes no out-of-court statements.  Second, as a member of the Executive Committee, Baldwin has personal knowledge of recent retention raise negotiations within the department.

**Paragraph 15.** Defendants' objections to this paragraph based on lack of foundation, and defendants' assertion that "the characterization of unethical conduct lacks citation to any authority," are without merit. Baldwin recounts her personal experience of being invited to apply for positions at other institutions and explains why she did not pursue those invitations. Her opinion that it would be "unethical" for her to entertain a potential offer that she did not intend to seriously consider does not require a citation.

**Paragraph 16.** Defendants' objections to this paragraph based on lack of foundation, speculation, and lack of personal knowledge are without merit. Professor Baldwin describes her "observa[tions]" of how male and female faculty fare in the retention raise process, based on her experience serving as a Psychology Department faculty member at the University of Oregon since 1992. She also notes that her own experience in failing to successfully negotiate a retention raise has contributed to gendered salary differentials in the department. Baldwin's statement is based on direct observation and experience.

**Paragraph 17**. Defendants' objections to this paragraph based on lack of foundation, speculation, and lack of personal knowledge are without merit. Professor Baldwin here recounts that she and two

210 SW MORRISON ST., SUITE 400, PORTLAND, OR    ALBIES & STARK    97204 TEL 503.308.4770 | FAX 503.427.9292

colleagues proposed a set of guidelines to help ensure more equitable retention processes and transparency, and explains that, while the psychology faculty supported the proposals, no action has yet been taken to implement them. These statements are based on Baldwin's personal knowledge and experience. Simply put, there is no colorable basis for this objection.

**Paragraph 19**. Paragraph 19 states only that Baldwin declares under penalty of perjury that the foregoing is true and correct and provides no basis for any objection.

### VII.   **Cahill Declaration**

Defendants object to the declaration of Dr. Kevin E. Cahill, in which Dr. Cahill finds a statistically significant gender discrepancy in full psychology professor salaries that can be attributed to defendants' retention raise practices.

Defendants attack Cahill's declaration on the basis that Cahill "provides no report" and, in their objections, complain that the declaration is missing elements that an expert report generally would provide. But no such report is required at this stage. The deadline for the filing of expert reports is four weeks after the Court's ruling on dispositive motions. *See* Dkt. #48. Dr. Cahill's declaration is not intended to be an expert report, but is offered solely to provide evidence that disputed facts exist and to establish evidence relevant to Plaintiff's prima facie case: That full professor salaries in the department show a large disparity of outcomes between women and men that is highly unlikely to have occurred by chance, and that a particular employment practice -- the retention raise policy and practice – is the cause. Indeed, defendants will have the opportunity to move to strike Plaintiff's expert under Fed. R. Evid. 702 or 703 before trial, but Defendants did not

make such a motion here because summary judgment is not the appropriate stage for any such finding.

In addition, Defendants' objection should be denied because they fail to cite any *specific evidentiary* basis for it, arguing only that the "statistical analysis . . . does not meet standards of admissibility." Yet, the burden is on defendants to state their objections with specificity. *Burch*, 433 F. Supp. 2d at1121 (E.D. Cal. 2006) (citing Wright, Miller & Kane, 10B *Federal Practice and Procedure* § 2738 ("a motion to strike should specify the objectionable portions of the affidavit and the grounds for each objection. A motion asserting only a general challenge to an affidavit will be ineffective.")).

Further, and significantly, all of the cases that defendants cite in support of their objection – and all of the arguments that Defendants make based on those cases – concern the merits rather than the admissibility of evidence. For example, defendants argue that the analysis in Cahill's declaration is not "reliable," that Cahill did not provide a sufficient explanation of his methodology, and that evidence is not "probative." These arguments go to the weight of the evidence rather than its admissibility. *See Butler v. Portland Gen. Elec. Co.*, 748 F. Supp. 783, 786 (D. Or. 1990), *aff'd sub nom. Flynn v. Portland Gen. Elec. Co.*, 958 F.2d 377 (9th Cir. 1992) (declining to exclude Plaintiff's statistical study based on arguments that analysis was flawed and unreliable, because "most of [Defendants'] arguments go to the weight and credibility of the evidence, rather than its admissibility"); *Adidas Am., Inc. v. Payless Shoesource, Inc.*, 546 F.Supp. 2d 1029, 1044 (D. Or. 2008) (rejecting the Defendants request to strike an expert report because the "methodology was flawed" because each of the objections "go to the weight" of the evidence, rather than their admissibility); *Hall v. Baxter Healthcare Corp.*, 947 F. Supp. 1387, 1398 n.28 (D. Or. 1996) (recognizing the 'admissibility' and

PAGE 21-  PLAINTIFF'S SURREPLY TO DEFENDANTS' EVIDENTIARY OBJECTIONS

'sufficiency' of scientific evidence necessitate different inquiries and involve different stakes)
(citation omitted).

Moreover, Defendants are wrong because Cahill's declaration was adequate for the purpose
of establishing questions of fact. Cahill describes the specific information he used in creating his
analysis. *See* Dkt. #71, p. 1, ¶ 3 (describing the time period and specific data he reviewed). He also
describes with specificity his methodology. *Id.* at ¶ 4. Defendants' expert asserts that Dr. Cahill
answers, "the wrong research question," but that too is a disputed question of fact establishing the
relevancy of his declaration.

In fact, instead of providing a basis for excluding Cahill's declaration, defendants' arguments
highlight contested questions of fact. For example, defendants assert that "no legally meaningful
statistical inferences of discrimination can be drawn from so small a data set," which is directly
contradicted by Dr. Cahill's finding that "the difference by gender was highly statistically significant
at the 1-percent level ($p=0.004$); that is, with a 99-percent degree of confidence." The fact that
Defendants' expert, Debra Jones Ringold, disagrees with Cahill's methodological choices and
conclusions similarly proves contested questions of fact exist.

In addition, Dr. Ringold's evaluation illustrates disputes of facts between Defendants' expert
on the one hand, and Defendants Hal Sadofsky and Professor Mayr on the other. As Plaintiff
discussed in her Opposition brief, both Defendant Sadofsky and Professor Mayr have acknowledged
that retention raises have adversely benefited men and disadvantaged women in the department;
conversely, Dr. Ringold suggests that there may be no correlation or association between gender and

retention raises at all.  This creates a question of fact not only between Dr. Ringhold and Dr. Cahill, but significant additional evidence in the record as well, including from Sadofsky and Mayr.

Finally, Defendants' make an incorrect assertion regarding Cahill's declaration.  Specifically, defendants assert that Dr. Cahill wrote that he removed two professors from consideration in his statistical analysis, when in fact there is no such assertion. *Compare* Def's Reply at p. 15 to Dkt. 71, Exh. A, Note (describing exclusion of three professors).

## VIII.  CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this Court deny Defendants' evidentiary objections.

Dated:  January 11, 2019

By:

Caitlin Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
Jennifer J. Middleton, OSB No. 071510
jmiddleton@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON, PC
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Phone: 541-683-2506
Fax: 541-484-0882

Whitney Stark, OSB No. 090350
whitney@albiesstark.com.com
210 SW Morrison St., Suite 400
Portland, OR  97204
Telephone: (503)384-2070
Fax: (503)894-5022

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on January 11, 2019, I caused to be served a true and correct copy of **PLAINTIFF'S SURREPLY TO DEFENDANTS' EVIDENTIARY OBJECTIONS** on the following persons in the manner indicated below at the following addresses:

Paula A. Barran
Shayda Zaepoor Le
Donovan L. Bonner
Barran Liebman LLP
601 SW 2nd Avenue, Suite 2300
Portland, OR  97204-3159
**pbarran@barran.com**
**sle@barran.com**
**dbonner@barran.com**
 *Of Attorneys for Defendant University of Oregon and Hal Sadofsky*

**AND**

Stephen F. English
Cody Weston
Nathan R. Morales
Perkins Coie LLP
1120 N.W. Couch Street, 10th Floor
Portland, OR 97209-4128
**senglish@perkinscoie.com**
**cweston@perkinscoie.com**
**nmorales@perkinscoie.com**
 *Of Attorneys for Defendant Michael H. Schill*

| | |
|---|---|
| __X__ | by CM/ECF system transmission on January 11, 2019. |
| _____ | by U.S. Postal Service to the address indicated above on _____, 2019. |
| _____ | by email to the address indicated above on _____, 2019. |
| _____ | by email via the Court's electronic filing system on _____, 2019. |

**JOHNSON, JOHNSON, LUCAS & MIDDLETON, PC**

By: _____

Elise K. Balesteri, Paralegal
541/484-2434
541/484-0882 fax
ebalesteri@justicelawyers.com

**JOHNSON, JOHNSON, LUCAS & MIDDLETON, PC**
**975 Oak Street, Suite 1050**
**Eugene, OR  97401**
**541/683-2434p**

CERTIFICATE OF SERVICE