Jennifer J. Middleton, OSB # 071510
jmiddleton@justicelawyers.com
Caitlin V. Mitchell, OSB # 123964
cmitchell@justicelawyers.com
JOHNSON, JOHNSON, LUCAS & MIDDLETON, PC
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Phone: 541/683-2506
Fax:     541/484-0882

Whitney Stark, OSB # 090350
whitney@albiesstark.com
Albies & Stark, LLC
210 SW Morrison Street, Suite 400
Portland OR 97204-3189
Phone: 503/308-4770
Fax:     503/427-9292

Attorneys for Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# EUGENE DIVISION

| | |
|---|---|
| JENNIFER JOY FREYD, | Case No. 6:17-CV-00448-MC |
| Plaintiff, | PLAINTIFF'S OBJECTION TO DEFENDANTS' BILL OF COSTS |
| vs. | |
| UNIVERSITY OF OREGON, MICHAEL H. SCHILL and HAL SADOFSKY, | |
| Defendants. | |

Defendants seek $12,588 in costs from their employee, Dr. Jennifer Freyd. Their request should be denied in full because an award of costs would be inequitable and would chill civil rights litigation regarding an issue of substantial public importance. In the alternative, this Court should deny all of Defendants' requested costs that were not "necessarily obtained" for use in the case.

I. **Defendants' requests should be denied in full because an award of costs would be inequitable and would chill civil rights litigation regarding an issue of substantial public importance.**

The trial court has broad discretion to determine whether or not a prevailing party is entitled to costs under FRCP 54(d)(1). *Padgett v. Loventhal*, 706 F.3d 1205, 1209 (9th Cir.2013) (district court has discretion to deny costs); *Arboireau v. Adidas Salomon AG*, No. 01–105–ST, 2002 WL 31466564, at *4 (D. Or. June 14, 2002) (trial judge has "wide discretion" in awarding costs). A court may deny costs for reasons including, but not limited to, the substantial public importance of the case; the chilling effect on future similar actions; the closeness and difficulty of the issues; and the economic disparity between the parties. *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1247-48 (9th Cir. 2014). Each of those factors applies in this case.

### A. This is a case of substantial public importance.

Dr. Freyd's case raises novel questions about the application of equal pay laws in an academic setting, which is an area of great public interest and a prominent civil rights topic. In *Escriba*, the 9th Circuit held that the district court had appropriately denied costs to the prevailing defendant where the plaintiff, a worker at a poultry processing plant, alleged that her employer had violated her rights under the Family Medical Leave Act (FMLA). *Escriba*, 743 F.3d at 1247-48. The district court found that the case was of "substantial public importance" because cases like the plaintiff's, even when brought on behalf of an individual, establish the parameters of what constitutes "sufficient notice" under the FMLA and help to protect "vital civil rights for women in the workplace." *Id.* The court noted that the defendant's own attorneys had acknowledged the broad implications of the plaintiff's case. *Id.* at 1248.

Dr. Freyd's case is likewise of substantial public importance, because it tests the parameters of anti-discrimination and equal pay laws in the higher education context and concerns the protection

of vital civil rights for women: The right to equal pay and to be free from gender-based discrimination in the workplace. Dr. Mayr, the head of Dr. Freyd's own department, identified a "considerable gender inequality" in full professor salaries, noting that the "imbalance is difficult to ignore" and results in a "threat to overall morale" for junior female faculty, "who wonder if they can escape the same fate as their senior colleagues." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, Ex 22; *see also* Decl. of Jennifer Gomez at ¶¶5-8 (describing the significant, negative impact of witnessing gender discrimination against Dr. Freyd from the perspective of a female graduate student of color at the University of Oregon). Dr. Mayr identified Dr. Freyd as the "most glaring inequity case." *Id.* Dr. Freyd filed this lawsuit only after she sought to resolve the matter with the University and it failed to take corrective action.

Dr. Freyd's case has had an impact far beyond her own personal circumstances. In June 2017, soon after Dr. Freyd filed this lawsuit, sixty Psychology Department graduate students signed an open letter thanking her for "bringing to light [the] pervasive issue . . . [of] gender discrimination." Declaration of Jennifer Gomez ¶3, Ex 2. Noting that they each had their "own experiences around this issue," they wrote: "In addressing gender discrimination, you have indirectly given much to us graduate students. Not the least of which is hope . . . for a life in which such discrimination is a thing of the past." *Id.* Dr. Freyd's case has received wide coverage in media and blogs, both on and off campus, further demonstrating significant interest in the lawsuit and the issues it raises.[1]

---

[1] *See, e.g.*, https://www.insidehighered.com/news/2019/05/28/professor-loses-sex-discrimination-case-over-her-pay-vows-fighthttps://www.registerguard.com/rg/news/local/35403027-75/uo-psychology-professor-sues-university-in-equal-pay-case.html.csp;
https://www.klcc.org/post/professor-files-sex-bias-lawsuit-against-u-o-pay-discrimination;
https://www.opb.org/news/article/university-oregon-pay-discrimination-professor-lawsuit/;
https://www.dailyemerald.com/news/psychology-professor-appeals-dismissal-in-equal-pay-lawsuit-with-uo/article_24776a78-7c29-11e9-8d94-9b2a5d43145c.html;
http://uomatters.com/2019/05/gender-gaps-in-outside-offers-and-retention-freyd-lawsuit.html.

Finally, as in *Escriba*, Defendants themselves frame this case as one of substantial public importance (although Plaintiff disagrees with Defendant's assertions), arguing that the retention practices and policies challenged by Dr. Freyd are crucial to the University's ability to retain productive faculty, funding, and even R1 status. Defendants' Reply Br. at 29-30.

### B. An award of costs in this case would have a chilling effect on current and future victims of discrimination.

This case raises issues that directly affect the lives of female faculty in higher education, as well as graduate students who hope to pursue academic careers. An award of costs would chill future litigation by signaling to female students and faculty that, should they bring a claim, they will be saddled with significant economic costs. Dr. Jennifer Gomez, an Assistant Professor of Psychology and a former graduate student of Dr. Freyd's, describes her "biggest fears" regarding the case:

> If Dr. Freyd, who for decades has engaged in outstanding job performance, also has a background, status, and privilege that I do not have, what hope is there for me to be able to contribute my talent and expertise to academia without discrimination? If I do assert my rights, will I be protected from my university's attempts to take more money from me in the form of costs? Or will asserting my rights lead to financial debt? If Dr. Freyd is ordered to pay the costs of this case, professionals who want to assert their legal rights against discrimination—especially those who are early on in their careers and lack financial resources—may be discouraged from doing so. This would undercut the court's ability to uphold the law. It would also have a disproportionate impact on those who make less money, and therefore, would be less able to pay such costs.

Decl. of Jennifer Gomez ¶¶8-9; *see also id.* at ¶2, Ex 1. Melissa L. Barnes, a current University of Oregon graduate student, has similar concerns:

> If Dr. Freyd is ordered to pay the costs of this case, a clear message will be sent to others who might have considered bringing similar legal actions. The conveyed message would be that an employer would financially punish an employee, who was already underpaid for their work, for advocating for equity in the workplace.

Decl. of Melissa L. Barnes ¶3.

The University's actions towards Dr. Freyd already have had a significant impact, adversely affecting the ways in which women understand their jobs, their value to the University, and their prospects for equitable pay. Knowledge of the gendered wage disparity has caused graduate students in the Department of Psychology "sadness, frustration, anger, fear, and hurt," and has led some to question whether they should remain in academia at all. *Id.* at ¶3, Ex 2; Decl of Jennifer Gomez ¶6 ("As a direct result of witnessing University of Oregon's discrimination against Dr. Freyd, I have seriously contemplated pursuing a career outside of academia."). An award of costs would further fuel these fears.

### C. This case raises close and difficult issues.

The closeness and difficulty of this case further supports a denial of costs. The 9th Circuit in *Escriba* held that the district court was justified in finding in favor of the plaintiff on that factor because the issues in the case "required close attention to detail," including "hearing and understanding expert testimony," evaluating workplace policies, and understanding FMLA regulations and their application to the facts. 743 F3d at 1248. The plaintiff's case "address[ed] an important legal question" that turned on "careful evaluation" of testimony and evidence. *Id.*

Dr. Freyd's case also involves difficult and complex legal issues. Her amended complaint raised ten claims involving ten distinct state and federal statutory and constitutional grounds. The Motion for Summary Judgment was extensively briefed by both parties and was supported by voluminous exhibits, including deposition testimony, declarations, and statements by experts. The case raises important legal questions including the meaning and scope of the Equal Pay Act, its relationship to Title VII and state law, and the necessary showing for a disparate impact claim. Because case law applying the equal pay analysis in an academic setting is sparse, this case is likely to provide guidance and relevant authority in future cases.

**D. There is a great economic disparity between the Defendants and Dr. Freyd.**

Finally, Defendants' requests for costs should be denied in their entirety because of the great economic disparity between Dr. Freyd – an individual university professor – and Defendants University of Oregon and President Michael Schill (whose base salary is $720,000, with an annual performance bonus of up to $200,000). This factor on its own justifies a denial of Defendants' request for costs. But if this Court determines that some award to Defendants is warranted, it can and should utilize this factor to reduce the costs that Dr. Freyd must pay. *See Powell v. Adlerhorst Int'l, Inc.*, No. 3:14-CV-01827-MO, 2017 WL 1371269, at *2 (D. Or. Apr. 12, 2017) (reducing costs where there was a "relatively modest economic disparity" between the parties).

## II. Individual objections.

If this Court declines to deny Defendants' requests for costs in their entirety, it should deny all costs that were not "necessarily obtained" for use in the case. *See* 28 U.S.C. § 1920 (fees for transcripts and copying may be taxed if necessarily obtained for use in the case); *Crawford Fitting Co. v. J. T. Gibbons, Inc.*, 482 U.S. 437, 441–42 (1987) (taxable costs limited to those enumerated by statute).

**A. This Court should deny Defendants University of Oregon and Hal Sadofsky's requests for fees for printed or electronically recorded transcripts that were not "necessarily obtained."**

When depositions are used only for discovery, investigative, or preparatory purposes, the associated costs are part of the normal preparation for trial and are not taxable. *Kelley v. Sears, Roebuck & Co.*, No. CV-01-1423-ST, 2004 WL 1824121, at *4 (D. Or. Aug. 10, 2004) (citing *Independent Iron Works, Inc. v. United States Steel Corp.*, 322 F.2d 656, 678 (9th Cir)); *see also Alexander Mfg., Inc. Employee Stock Ownership and Trust v. Illinois Union Ins. Co.*, 688 F.Supp.2d 1170 (D. Or. 2010) (costs related to depositions that "were merely useful for discovery" are not "necessarily obtained").

This Court should deny Defendants' request for the costs of the deposition transcripts of Dr. Sanjay Srivastava ($844.15), Dr. Andrew Marcus ($382.05), and Jody Shipper ($342.30), because Defendants did not cite or rely upon those transcripts in their Motion for Summary Judgment or in any of their other pleadings. *See Arboireau v. Adidas Salomon AG*, No. CV-01-105-ST, 2002 WL 31466564, at *5–6 (D. Or. June 14, 2002) (deposition transcript costs not recoverable where the defendants made no showing that transcripts were necessarily obtained to support the summary judgment motion); *Malbco Holdings, LLC v. AMCO Ins. Co.*, No. CV-08-585-ST, 2010 WL 11579387, at *1 (D. Or. July 29, 2010) (cost of obtaining documents was not recoverable, where documents were unnecessary to the prevailing party's result).

Furthermore, the depositions described above were of Defendants' own employees; Defendants could have obtained information directly from those individuals without reliance on the transcripts, and did, in fact, submit declarations from its employees in support of its Motion for Summary Judgment. *See Arboireau*, 2002 WL 31466564, at *5–6 (denying costs of transcripts in part because deponents were the defendant's own employees, from whom defendant could and did obtain declarations in support of its summary judgment motion). Defendant's bare assertion that it "reasonably believed these transcripts would be necessary for trial and motion practice" is insufficient to establish that they were "necessarily obtained" under 28 USC sec 1920(2). *See Malbco Holdings, LLC*, 2010 WL 11579387, at *2 (counsel's statements that transcripts were "used for my preparation of the case" insufficient to establish that transcripts were "necessarily obtained," where counsel did not indicate how he used the transcripts or why they were needed apart from discovery or convenience); *Haney v. Timesavers, Inc.*, No. CIV. 92-270-FR, 1994 WL 377741, at *2 (D. Or. June 22, 1994) (denying deposition costs where court could not determine based on the record whether depositions were necessarily obtained or merely useful for discovery).

This Court should also deny Defendants' requests for the cost of "real time" or rough draft versions of certain deposition transcripts (Dr. Sadofsky ($464), Dr. Coltrane ($244.80), Dr. Mayr ($497.60), and Dr. Freyd ($304)), where Defendants also have sought costs for the certified copies of the same transcripts. The additional drafts are redundant, and Defendant has provided no explanation as to why they were necessarily obtained.

### B. This Court should deny Defendants University of Oregon and Hal Sadofsky's requests for costs for exemplification and the costs of making copies that were not "necessarily obtained."

Photocopying costs are recoverable only to the extent that copies were "necessarily obtained for use in the case." 28 U.S.C. § 1920(4). Costs associated with in-house photocopying or other activities for the "convenience of counsel" are not recoverable. *Frederick v. City of Portland*, 162 F.R.D. 139, 144 (D. Or. 1995). Courts construe § 1920(4) narrowly, such that the circumstances in which a copy will be deemed "necessarily obtained" for use in a case "will be extremely limited." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 930 (9th Cir. 2015). The fact that the document production process involves the creation of a copy does not establish that the copy is necessarily obtained for use in the case. *Id.* (although a lawyer who chooses to review electronically stored information by uploading it onto his own computer has necessarily created a copy of that information, the lawyer's ability to review the original document establishes that the uploaded copy was not necessarily obtained for use in the case).

Defendants request $1,112.30 for costs required to "cop[y] electronic documents from multiple custodians into a single database," which Defendants state was necessary because it allowed them to "make necessary redactions to preserve the confidentiality of education records, pursuant to the Family Educational Rights and Privacy Act." This request should be denied, because the copying that Defendants describe was done "in-house" for the convenience of counsel – to allow

Defendants to comply with statutory requirements unrelated to the litigation in this case – and thus was not required for purposes of discovery. Although the process of copying the electronic documents into a single database may have been a step in Defendants' production process, it was not required for purposes of discovering those electronic documents to Plaintiff.

### C. This Court should deny Defendant Michael H. Schill's request for fees associated with printed, electronic, and video-record deposition transcripts.

Defendant Schill's demand for $3,853.95 for printed and video-recorded deposition transcripts is unreasonable and should be denied. As noted, a prevailing party is only entitled to costs for printed or electronically recorded transcripts that were "necessarily obtained" for use in the case. Defendant Schill does not explain why he needed or how he utilized the transcripts and video recordings, nor can any such need or use be inferred. His Motion for Summary Judgment is two pages long and adapts and incorporates by reference Defendants University of Oregon and Hal Sadofsky's Motion for Summary Judgment. Defendant Schill's motion includes no argument or independent citations to any deposition transcripts. *See Arboireau*, 2002 WL 31466564, at *5–6 (deposition transcript costs not recoverable where the defendants made no showing that transcripts were necessary to summary judgment motion).

If this Court declines to deny Defendant Schill's request for costs in its entirety, it should disallow costs for the video recordings of Defendant Schill's deposition ($42.50) and Plaintiff's deposition ($1,067.78). The cost of videotaping depositions, like the cost of deposition transcripts, is recoverable under 28 U.S.C. 1920(2) only when it was necessarily obtained for use in the case. For example, in *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008), the case cited by Defendant in support of his request for video costs, the prevailing party used the video-recorded deposition at issue to support its motion for summary judgment. Here, Defendant videotaped

Plaintiff's deposition but has not explained why that action was necessary. Defendant did not utilize the video recording in any dispositive motion, Plaintiff would have been available at trial, and the video costs duplicate the cost of the transcript. *See Arboireau*, 2002 WL 31466564, at *5–6 (disallowing costs for videotaping where the defendant failed to explain why it was necessary, particularly considering that the transcript contained the same information). This Court also should deny Defendant's request for the costs of the rough draft of Plaintiff's deposition transcript ($235.95), for the same reasons that it should deny rough and "real time" draft costs requested by Defendants University of Oregon and Hal Sadofsky.

For the above reasons, Plaintiff respectfully requests that this Court deny Defendants' requests for costs.

Dated: May 29, 2019

By: _____
Caitlin Mitchell, OSB No. 123964
cmitchell@justicelawyers.com
Jennifer J. Middleton, OSB No. 071510
jmiddleton@justicelawyers.com
JOHNSON JOHNSON LUCAS & MIDDLETON, PC
975 Oak Street, Suite 1050
Eugene, OR 97401-3124
Phone: 541-683-2506
Fax: 541-484-0882

Whitney Stark, OSB No. 090350
whitney@albiesstark.com.com
210 SW Morrison St., Suite 400
Portland, OR 97204
Telephone: (503)384-2070
Fax: (503)894-5022

*Attorneys for Plaintiffs*